UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 22-056-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| GREGORIO DIAZ-RAMOS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

The United States filed a motion *in limine* seeking to preclude Defendant Gregorio Diaz-Ramos from: (1) raising or arguing a duress defense without first making a *prima facie* showing that he is entitled to raise the defense; and (2) raising any other reasons for his re-entry to the United States that are not relevant to his guilt but which might unduly appeal to juror sympathy. [Record No. 30] Thereafter, Diaz-Ramos filed a motion for an evidentiary hearing to present evidence regarding his fear of returning to Honduras. This Court sustained the government's motion in full following an evidentiary hearing. This Memorandum Opinion and Order provides further explanation and authority for the Court's ruling.

I.

Diaz-Ramos is a citizen of Honduras and first entered the United States in 1993. He sought temporary protected status in the United States in 2002, but failed to submit additional evidence to the Immigration and Naturalization Service ("INS"). His request was denied because of his failure to submit the requested evidence.

Diaz-Ramos was first ordered to be removed from the United States by an immigration court in Louisville on May 10, 2004. However, the defendant has re-entered and subsequently been removed from the United States five additional times in October 2012, July 2013, October 2013, April 2014, and November 2014. Diaz-Ramos again sought temporary protected status in the spring of 2013, contending that he was threatened by "young people from a certain political party" (i.e., the National Party) and he was fearful of gangs and drug traffickers; however, his request was not successful.

Relevant to this case, Diaz-Ramos was found at the Fayette County Detention Center on May 10, 2022, when Immigration and Customs Enforcement ("ICE") determined that he had previously been removed from the United States. Thereafter, he was indicted in this Court on one count of illegal re-entry by a previously deported alien, in violation of 8 U.S.C. § 1326. Trial is scheduled to begin on Thursday, August 18, 2022.

In advance of the trial, the United States filed a motion *in limine* to exclude potential evidence to support a duress defense based on Diaz-Ramos' history of claiming fear of returning to Honduras unless he can make a *prima facie* showing that he is entitled to offer such a defense. The defendant requested a hearing to offer evidence regarding why he believes his life would be in grave danger if he is returned to Honduras and that this justifies his re-entry into the United States without seeking appropriate permission.

The Court granted the defendant's request for a hearing and heard testimony from the defendant. The defendant testified that he first entered the United States in 1993 or 1994. He explained that he decided to come to the United States with a friend of his after his godmother passed away. The defendant did not indicate that he originally sought to enter the United States because he was in fear for his life.

Later in the hearing, the defendant's attorney asked Diaz-Ramos about the time he reported to immigration authorities that he had a legitimate fear of returning to Honduras because he was threatened by individuals of a certain political party and that he was fearful of gangs. In response to his attorney's question, he explained that, in 2017, after having previously been removed from the United States, he was "fearful in Honduras" so he decided to go to Mexico. However, while he was in Mexico, he was kidnapped by the Zetas and they threatened him unless he paid a ransom. The defendant claimed that, after he paid his kidnappers, he was released. Diaz-Ramos explained that he is fearful of going back to Honduras because he is afraid of being kidnapped again and he does not have the money to pay another ransom (even though he previously was kidnapped in Mexico, not Honduras).

Thereafter, the defendant's attorney asked if there was additional information that Diaz-Ramos could provide to support his claim that his life would be in danger if he was returned to Honduras. In response, the defendant testified about an argument he had with an individual about his political party and how the man allegedly said that members of that party should "all be killed."[1] Later in the hearing, the defendant clarified that this argument took place while he was living in the United States. The defendant also conceded that he had never been attacked or physically assaulted because of his membership in a certain political party (this time, he claimed to be a long-time member of the National Party, and feared the Liberal Party in Honduras). Additionally, Diaz-Ramos also testified that his brother still lives in Honduras

---

[1] In a previous immigration proceeding conducted in 2013, the defendant provided sworn testimony that he was a member of the Honduras Liberal party and was fearful of the country's National Party. However, during the hearing held this date, Diaz-Ramos testified that he has always been a member of the National Party (or "Blue" party based on the color of the party flag) and was fearful of persecution from the Liberal Party.

and, since his most recent illegal return, he has not approached federal or state officials regarding his fear of persecution in Honduras.

## II.

A defendant may only present a defense of duress if he can establish a *prima facie* case for duress. *United States v. Velazquez-Negrete*, No. 5: 14-CR-112-JMH, 2015 U.S. Dist. LEXIS 26460, at *4 (E.D. Ky. Mar. 3, 2015). To establish a *prima face* case, the defendant must provide some evidence to demonstrate that:

> (1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) he had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; [and]
>
> (5) he did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Capozzi*, 723 F.3d 720, 725 (6th Cir. 2013) (quoting *United States v. Shemami*, 425 F. App'x 425, 427 (6th Cir. 2011)). If the defendant does not provide sufficient supporting evidence, then the Court must exclude any evidence of the defense. *Id*.

A defendant cannot merely allege generalized fear of harm to satisfy his burden. *United States v. Bonilla-Siciliano*, 643 F.3d 589, 591 (8th Cir. 2011); *United States v. Stevens*, 985 F.2d 1175, 1182 (2d Cir. 1993) (explaining that "fear must be more than a general apprehension of danger"). Additionally, "[i]f there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened

- 4 -

harm," the defendant cannot satisfy the third element. *United States v. Bailey*, 444 U.S. 394, 410 (1980) (internal quotations omitted).

As explained at the hearing, Diaz-Ramos did not make a sufficient showing to establish any of the elements to support a duress defense. He offered conflicting testimony about political persecution, and he only offered generalized statements of fear of political persecution. *Bonilla-Siciliano*, 643 F.3d at 591. Additionally, his alleged kidnapping in Mexico several years ago does not present an immediate threat of bodily harm if he is returned to Honduras. Diaz-Ramos had alternatives to violating the law and he testified that he did not reach out to immigration officials to indicate that he feared returning to Honduras. *See United States v. Ibarra-Pino*, 657 F.3d 1000, 1005 (9th Cir. 2011) ("The opportunity to surrender to the authorities on reaching a point of safety presents an opportunity to escape the threatened harm."). At any point in time after his re-entry, Diaz-Ramos could have taken the opportunity to contact authorities for help with any threat of harm but, instead, ICE found Diaz-Ramos in custody in the Fayette County Detention Center. In short, Diaz-Ramos failed to present sufficient evidence to make a *prima facie* showing on any of the elements of a duress defense.

The United States also moved to prohibit the defendant from presenting evidence on other motives for entry, such as generalized fear, familial disruption, or economic hardship because they are not relevant and would appeal to the sympathies of the jury. Federal Rule of Evidence 401 states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Rule 403 states that a court "may exclude relevant evidence if its

probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

> The elements of illegal re-entry under 8 U.S.C. § 1326 are:
>
> (1) That the defendant was an alien at the time alleged in the indictment.
> (2) That the defendant had previously been deported or removed from the United States.
> (3) That thereafter the defendant knowingly entered or was found in the United States.
> (4) That the defendant had not received the consent of the Secretary of the Department of Homeland Security or the Attorney General of the United States to apply for readmission to the United States since the time of the defendant's previous deportation.

Fifth Circuit Pattern Jury Instructions § 2.03. "The motive of the illegal entrant in reentering is irrelevant to the commission of the offense" under 8 U.S.C. § 1326. *United States v. Dyer*, 325 F.3d 464, 471 (3d Cir. 2003); *see also United States v. Barajas-Garcia*, 229 F. App'x 737 (10th Cir. 2007) (explaining that no specific motive or intent is required to be guilty of illegal re-entry).

Further, evidence of generalized fear, familial disruption, economic hardship, or any other reason for Diaz-Ramos' re-entry into the United States will be excluded because it is not relevant to the elements of the crime and would unduly appeal to the sympathies of the jury. Accordingly, any other evidence regarding Diaz-Ramos' reasons for entering the United States will be excluded.

### III.

Next, the United States moved during the hearing for the Court to make a preliminary determination under Federal Rule of Evidence 104 to certify a copy of exhibits contained in the defendant's alien file as an official record. Federal Rule of Evidence 1005 allows a party to "use a copy to prove the content of an official record — or of a document that was recorded

- 6 -

or filed in a public office as authorized by law — if these conditions are met: the record or document is otherwise admissible; and the copy is certified as correct in accordance with Rule 902(4) or is testified to be correct by a witness who has compared it with the original." Federal Rule of Evidence 902(4) notes that a copy of an official record is self-authenticating if the copy is certified as correct by the custodian or another person authorized to make such certification. The United States provided the proper certification at the hearing and the exhibits can be admitted without further authentication, if they are offered through the appropriate witness.

Finally, the United States indicated that it would be offering evidence of the defendant's prior removals from the United States under Rule 404(b) of the Federal Rules of Evidence. Counsel for the defendant has examined the proposed evidence and believes it will be admissible for the reasons stated by the government. Therefore, the United States oral motion was sustained as to both matters.

### IV.

Accordingly, for the reasons explained herein and during the hearing held this date, it is hereby

**ORDERED** as follows:

1. The United States' motion *in limine* is **SUSTAINED**. The defendant is precluded from offering a defense of duress or raising any other reasons for illegally re-entering the United States that are relevant to whether he is guilty of this offense.

2. The United States' oral motion for certification and preliminary admission of trial exhibits included in the defendant's alien file is **SUSTAINED**.

- 8 -

3. The United States preliminary offer of proof of prior removals will be admissible under Rule 404(b) of the Federal Rules of Evidence. The government is directed to tender a proposed instruction to the jury on this issue for consideration in advance of trial.

Dated: August 17, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky